# EXHIBIT A

4390007.1

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
David L. Tillem, Esq.
1133 Westchester Avenue
White Plains, New York 10604
Tel: (914) 872-7104
Fax: (914) 323-7001
E-Mail: David.Tillem@WilsonElser.com
Attorneys for Defendant Monika Wrobel
File No.: 14734.00001

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In Re:

    ROMAN SLEDZIEJOWSKI,

                Debtor.

Chapter 7

Case No.: 13-22050 (RDD)

------------------------------------------------------------X

MARIANNE T. O'TOOLE, as Chapter 7
Trustee of the Estate of ROMAN
SLEDZIEJOWSKI,

                Plaintiff,

- against -

MONIKA WROBEL, RML DEVELOPMENT,
INC., JACRS, LLC, MLR DEVELOPMENT, INC.,
POL MARKETING, INC., JERAZ SLEDZIE-
JOWSKI, ELZBIETA SLEDZIEJOWSKI, PAUL
FOLKES, IRA S. KARABA, VIET HA DO,
LAWRENCE W. JACKSON, ESQ., JANE
DOE "1" through "10" and JOHN DOE "1"
through "10",

                Defendants.

Adv. Proc. No.:
    13-08317 (SHL)

------------------------------------------------------------X

TILLEM DECLARATION IN SUPPORT OF APPLICATION OF WILSON ELSER TO
WITHDRAW AS COUNSEL TO DEFENDANT MONIKA WROBEL

1
4909878.1

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, by David L. Tillem ("Wilson Elser"), an attorney duly admitted to practice law in this Court, counsel to the defendant Monika Wrobel, respectfully states, under the penalty of perjury, as follows:

1. Monika Wrobel ("Wrobel") is the former wife of the debtor Roman Sledziejowski (the "Debtor").

2. On July 9, 2013, the trustee, Marianne O'Toole (the "Trustee") filed this adversary proceeding (Docket Nos. 1 and 24 (Amended Complaint)) seeking, inter alia, with respect to Wrobel, to set aside multiple alleged fraudulent conveyances of property transferred to Wrobel, which transfers were made pursuant to a Judgment of Divorce issued by the New York State Supreme Court, County of Westchester.

3. Wilson Elser appeared in this adversary proceeding (Docket No. 8) on behalf of Wrobel and filed an Answer and Affirmative Defenses (Docket No. 43).

4. Currently, this adversary proceeding is in its early stages. The parties just agreed to a discovery scheduling order. It was submitted to the Court for approval on January 28, 2014. Initial mandatory discovery is just now due. The undersigned have provided responses under Rule 26(a) (1).

5. For the reasons set forth hereinafter, Wilson Elser now seeks to withdraw as counsel to Wrobel pursuant to Rule 2090-1 (e) of the Local Rules of the Southern District of New York Bankruptcy Court.

6. Wilson Elser proffers two bases to withdraw as counsel. First, there is the proverbial failure to pay the bills sent to her by Wilson Elser. Wrobel executed a retainer on April 5, 2013, a copy of which is attached as Exhibit "A," in which she agreed to pay

a "back end" retainer of $7,500.00 and to pay the monthly bills submitted to her within thirty (30) days. She paid the $7,500.00 retainer. She paid the bills through August, 2013 and a part of the September, 2013 bill. But, despite repeated oral, written and e-mail requests she has failed to pay any of the later monthly bills sent to her and consequently is in arrears for the months of September, 2013 through January 2014. Wilson Elser finally applied the "back end" retainer to the open invoices. Including the retainer, Wrobel has paid $23,691.46. There remains due and owing the sum of approximately $32,800.00 through the bill dated January 27, 2014. Fees have continued to accrue due to time expended in a fruitless meeting with Ms. Wrobel on Monday, January 27, 2014, the preparation of the initial discovery response and other legal efforts made on behalf of Wrobel.

7. Wrobel has made numerous promises to raise the funds, or borrow the funds, to pay at least some of these arrears. No payments have been forthcoming since the summer of 2013. She has current access to funds, albeit they are funds in the IRA transferred to her pursuant to the divorce decree. She can likely raise significant funds by agreeing to sell her interest in JACRS. Yet, she has done nothing. Wilson Elser estimates that an additional $60,000.00 to $100,000.00, or more, is likely needed to take this matter through what promises to be a long and difficult discovery process, particularly given the number of co-defendants and then through trial.

8. Second, there has been a total, complete, abject breakdown in communications between Ms. Wrobel and the undersigned. I tried setting up a meeting with Ms. Wrobel in early December, 2013, to discuss the case, lay out her options, and review her defenses and documents. I sent her a list of all the categories of documents I wanted her to bring

3
4909878.1

to my office. It was not until January 27, 2014, that Ms. Wrobel finally came to my office.

9. Ms. Wrobel lives in Ossining, Westchester County. She lost her job several months ago and remains unemployed. I offered to meet her in Mt. Kisco in mid January. She declined. She never made me aware of any time consuming activities that precluded her from coming to my office earlier. Finally, after probably six or seven weeks of continual prodding, she came to my office. I had requested that she bring all the documents in her possession. Although she sent me documents previously, that was done in response to specific requests I made, almost all made in mid year 2013. But this piecemeal approach to gathering documents left me concerned that I was not seeing all the relevant and material documents, most if not all of which would have to be identified or produced in the initial discovery or thereafter pursuant to a likely Notice to Produce to be sent by the Trustee's counsel. She came to my office on the 27th of January with no documents whatsoever.

10. There were multiple aspects of this case that she needed to focus on and advise me how she wanted to proceed. For example, her principal and by far largest asset is her 50% interest in JACRS, a limited liability company that owns a small building in uptown Manhattan. She received that as part of the divorce. The Trustee is seeking to avoid that transfer to her. The other 50% owner, "John" has repeatedly advised that he wants to be free of the building, i.e. that he wants to sell the building or be bought out. Wrobel has no means of raising the funds to buy John out. The building has a mortgage of approximately $300,000.00. The rental income will not support an increased mortgage load. There are, I believe, seven apartments in total. It is my understanding that there is

4
4909878.1

only about $20,000 to $25,000 net income available annually. Ms. Wrobel has categorically refused to address the issue of John's desire to sell and has repeatedly refused to engage in any discussions or transactions to resolve the issue. John's legal remedy is to force a legal dissolution of JACRS on the ground of deadlock. No wrongdoing or adverse activities are alleged against John. Wrobel has, effectively, no defense to a petition for dissolution. To oppose that legal remedy will cost her $10,000 to $20,000 or more, funds which she does not have. And for what purpose other than to simply act oppositional? Yet, other than to refuse to approve a sale or take any affirmative steps to resolve the issue with John, Ms. Wrobel has categorically refused to address the issue.

11. Ms. Wrobel has apparently engaged in a business transaction related to a proposed purchase of the RML assets. Among the claims asserted by the Trustee in the adversary proceeding is one to substantively consolidate RML into the Sledziejowski bankruptcy case. Ms. Wrobel is fully aware of the Trustee's active pursuit and activities regar4ding RML. Ms. Wrobel formed a new entity, with Viet Ha Do and Paul Folkes, to acquire the real estate. I learned of this proposed transaction not from Ms. Wrobel, but from the Trustee's counsel.

12. Ms. Wrobel has made it clear to me that she does not trust me. She views the fact that the lawyers in this case, including the undersigned, Ms. O'Toole, Mr. Maniscalco, Ms. Feynman, are familiar with one another, as a "conflict." There simply is no working and workable relationship here between lawyer and client.

13. Under these circumstances, it is impossible to effectively represent her. She provides no realistic and useful guidance to her counsel. Perhaps she can find it in other

5
4909878.1

counsel; but I highly doubt it. She simply refuses to address the situation she finds herself in.

## LEGAL ARGUMENT

Rule 2090-1 (e) provides that if an attorney of record wishes to withdraw as counsel, he "may withdraw or be replaced only by order of the Court for cause shown." *SDNY Local Rule 2090-1 (e)*. The Rule does not define "for cause shown." We must turn to case law for that issue.

The leading bankruptcy case in this district appears to be Bankruptcy Judge Cecelia Morris' decision in *Norman Goldstein, et al. vs. Paul Albert, 277 B. R. 38; 2002 Bankr. LEXIS 441 (Bankr. SDNY 2002)*. Bankruptcy Judge Morris noted the prevailing sentiment regarding "cause" and the non-payment of legal fees when she stated:

> A number of courts have held that nonpayment of fees <u>alone</u> is insufficient cause for the withdrawal of counsel (citations omitted).

*Id. at 45 (emphasis added)*. We note that in the Albert case, more than $60,000.00 had been paid to the attorneys and less than $5,000 was in arrears. Further, the amount was in dispute. In this matter, Wrobel owes nearly $33,000.00 as of the last bill. She has not questioned any of the bills sent to her. And unlike the Albert case where there was a longstanding relationship between the attorney and his client, here the relationship is based solely on this single case.

Judge Morris continued and stated:

> Cause for withdrawal has been found, however, where in addition to nonpayment of fees, counsel has been the object of hostile conduct by

6
4909878.1

the client, (citations omitted), where the attorney-client relationship has become unproductive (citations omitted), and where there has been a breach of trust on the part of the client or a challenge to the attorney's loyalty (citations omitted).

*Id. at 46.* It is these points, in conjunction with the very substantial arrears that warrant the granting of this application. As described above, there has been a complete breakdown in the attorney-client relationship. Ms. Wrobel has refused and continues to refuse to take any guidance from her counsel. She is oppositional without stating any basis for that opposition and she offers no alternatives. She has viable defenses to the adversary proceeding – a judgment of divorce. Yet, she has a complete unwillingness to help herself and her defense. See also, *Forchelli, Curto, Deegan, Schwartz, Mineo, Cohn & Terrana, LLP vs. Nechama Hirsch, 2010 U.S. Dist. LEXIS 63436 (USDC EDNY, 2010); In re: Fosamax Products Liability Litigation, 2012 U.S. Dist. LEXIS 82024 p. 19* ("In the Southern and Eastern Districts of New York, the term "satisfactory reasons" has been construed to include "failure to pay legal fees, a client's lack of cooperation—including lack of communication with counsel, and 'the existence of an irreconcilable conflict between attorney and client.").

This matter, unfortunately, seems to encompass virtually every element identified by the courts as "cause" or "satisfactory reasons" to withdraw as counsel to a party.

WHEREFORE, for all the factual and legal reasons set forth above, Wilson Elser requests that it be granted leave to withdraw as counsel to defendant Monika Wrobel, together with such other and further relief as the Court deems just and proper.

Dated: January 29, 2014
       White Plains, New York

                                                David L. Tillem