**UNITED STATES BANKRUPTCY COURT**          <u>FOR PUBLICATION</u>
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:

ROMAN SLEDZIEJOWSKI,                        Chapter 7

                                            Case No. 13-22050 (RDD)
                            Debtor.
------------------------------------------------------------------x
MARIANNE T. O'TOOLE, as Chapter 7 Trustee of
the Estate of Roman Sledziejowski,

                            Plaintiff,

              vs.                           Adv. No. 13-08317 (SHL)

MONIKA WROBEL, RML DEVELOPMENT, INC.,
JACRS, LLC, MLR DEVELOPMENT, INC., POL
MARKETING, INC., JERZY SLEDZIEJOWSKI,
ELZBIETA SLEDZIEJOWSKI, PAUL FOLKES,
IRA S. KARABA, VIET HA DO, LAWRENCE W.
JACKSON, ESQ., JANE DOE "1" through "10" and
JOHN DOE "1" through "10",

                            Defendants.
------------------------------------------------------------------x

## <u>MEMORANDUM OF DECISION</u>

A P P E A R A N C E S:

LAMONICA HERBST & MANISCALCO, LLP
*Counsel for Marianne T. O'Toole, as Chapter 7 Trustee*
   By:   Joseph S. Maniscalco, Esq.
         Holly R. Holecek, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793

YANKWITT LLP
*Counsel for Habringer Group, Inc., Pojest Apartments, LLC and Viet Ha Do*
   By:   Kathy S. Marks, Esq.
         Russell M. Yankwitt, Esq.
140 Grand Street, Suite 501
White Plains, New York 10601

ROMAN SLEDZIEJOWSKI
*Pro Se*
195 Evan Drive
Ossining, New York 10562

PAUL FOLKES
*Pro Se*
3733 Richbrook Drive
Memphis, Tennessee 38135

SPACZYNSKI, SZCZEPANIAK I WSPOLNICY S.K.A.
*Counsel for Pawel Jankowski, Maria Jankowska, and PPJ Spolka Jawna*
  By:   Janusz Marzurek
          Stephen Terrett
Rondo Onz I 12th Floor
00-124 Warsaw, Poland

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion [ECF No. 291][1] of the Chapter 7 Trustee (the "Trustee")

in the bankruptcy case of Roman Sledziejowski (the "Debtor") for injunctive relief against a

number of defendants and third parties in this adversary proceeding.  The requested relief

relates to a preliminary injunction entered in this adversary proceeding almost two years ago.

*See Order Granting Preliminary Injunction*, dated August 22, 2013 [ECF No. 38] (the "2013

Injunction").  That original injunction prevented the defendants in this case—including Viet Ha

Do and Paul Folkes—from transferring, hypothecating, encumbering or otherwise disposing of

assets of the Debtor's estate.  *See id.*  The Trustee now asks that the 2013 Injunction be

extended to cover two additional entities—Habringer Group Inc. ("Habringer") and Pojest

Apartments, LLC ("Pojest")—that are owned by defendants Viet Ha Do and Paul Folkes.

Based on additional information provided after the filing of its motion, the Trustee also seeks to

expand the 2013 Injunction to two individuals—Pawel and Maria Jankowski—and their

---

[1]        Unless otherwise identified, all references to the Case Management/Electronic Case Filing ("ECF") docket
are to Adversary Proceeding No. 13-08317.

company, PPJ Capital, Inc. ("PPJ Capital")—that are involved in real estate purchases with Habringer and Pojest. Additionally, the Trustee seeks to expand the scope of the injunction to restrict the movement of all assets by these parties until such time as the Trustee is in a position to definitively determine whether these parties have assets of the estate.

On June 30, 2015, the Court held a hearing on the Trustee's motion, at which time the Court treated it as a request for a temporary restraining order. At the conclusion of that hearing, the Court granted the Trustee a temporary restraining order to apply the 2013 Injunction to Habringer, Pojest, Pawel and Maria Jankowski and PPJ Capital. The Court also entered a temporary restraining order to require Habringer and Pojest to disclose on a going-forward basis any instance where they transfer, hypothecate, encumber or otherwise dispose of any assets valued at more than $2,500.00. But the Court declined to extend this reporting requirement to Pawel and Maria Jankowski and their company, PPJ Capital. The reasons for the Court's decision were set forth in more detail from the bench on July 1, 2015. [ECF No. 336].

The Court set a deadline for the filing of supplemental papers on the Trustee's request for a preliminary injunction. Habringer, Pojest and Viet Ha Do relied upon the papers that they had already filed on the temporary restraining order. [ECF Nos. 314, 315, 316]. Additional papers were emailed to Chambers from what appeared to be a law firm in Poland, purportedly on behalf of Pawel and Maria Jankowski and PPJ Spolka Jawna, their Polish company.[2] These papers included what appeared to be a declaration from the Jankowskis, as well as papers containing legal argument. While the papers make reference to PPJ Capital, Inc.—which is a Delaware entity— the papers did not appear to be submitted on behalf of that entity. Despite

---

[2]    Counsel to the Jankowskis and PPJ Spolka Jawna do not represent that they are admitted in the Southern District of New York, nor have they filed a motion to be admitted *pro hac vice*. It therefore appears that counsel is not admitted to practice before this Court. *See* Rule 2090-1(a), (b) of the Local Bankruptcy Rules for the Southern District of New York.

not being filed and not appearing to come from an attorney who is authorized to practice law in this Court, the Court docketed these submissions. [ECF No. 332].

On July 10, 2015, the Court held a hearing on the Trustee's request for a preliminary injunction. At the hearing, counsel for Ms. Do, Habringer and Pojest opposed the Trustee's motion, but no one appeared on behalf of the Jankowskis or their entities. Ms. Do provided the only testimony at the hearing. The United States Trustee's Office appeared at the hearing in support of the request for a preliminary injunction. At the conclusion of the hearing, the Court scheduled the afternoon of July 13, 2015 to inform the parties of its ruling on the preliminary injunction and noted that the temporary restraining order would be in place until that ruling. In a July 13, 2015 bench decision, the Court granted the Trustee's motion and converted the relief granted in the temporary restraining order into a preliminary injunction.[3] The Court also entered additional relief to restrict, preserve and track assets that may be assets of the estate. A written order was subsequently entered granting a preliminary injunction to the Trustee. [ECF No. 345]. This written decision is issued to provide a more in-depth explanation of the background and reasons for the Court's ruling.[4]

## BACKGROUND

The current dispute cannot be understood without recounting the history in this case and the underlying bankruptcy.

---

[3]    A transcript of this July 13, 2015 proceeding has not yet been placed on the docket.

[4]    The Trustee's motion also seeks an order finding that various parties have failed to comply with disclosure obligations in the 2013 Injunction. *See Order Granting Preliminary Injunction* at 3, 6-7 [ECF No. 38]. That issue was addressed in the Court's ruling on the temporary restraining order and then later at the hearing on July 10, 2015. Accordingly, the disclosure issue is not addressed in this decision.

A.  The Debtor, the Bankruptcy and Related Proceedings

The Debtor is a stock broker who, prior to the commencement of these cases, ran a broker-dealer firm, with clients mainly from the Polish community in New York and Polish nationals.  *See* FINRA Compl. ¶ 2, attached as Exh. C to the *Supp. Affirmation with Respect to Roman Sledziejowski* [ECF No. 319-1].  Prior to his bankruptcy filing, the Debtor became the subject of an investigation by the Financial Industry Regulatory Authority ("FINRA") for, among other things, fraud, conversion, misuse of funds and falsification of documents.  *See Trustee's Amended Compl.* at 7 [ECF No. 24].  On November 28, 2012, FINRA's Department of Enforcement filed a disciplinary proceeding against the Debtor.  *See* FINRA Order Accepting Offer of Settlement at 1, attached as Exh. D to *Supp. Affirmation with Respect to Roman Sledziejowski* [ECF No. 319-1].  On December 11, 2012, FINRA permanently barred the Debtor from the investment advisory business for life.  *See Trustee's Amended Compl.* at 8 [ECF No. 24].  Subsequently, the Debtor submitted an offer to settle the FINRA action, and an Order Accepting Offer of Settlement was issued on February 1, 2013.  *See generally* Exh. D to *Supp. Affirmation with Respect to Roman Sledziejowski* [ECF No. 319-1].  The FINRA Settlement Order stated, among other things, that the Debtor defrauded three customers of approximately $4.8 million by converting customer funds for personal use, while also providing falsified account statements to those same customers.  *See id.* at 2-3.  The Debtor was barred from the financial industry in all capacities.  *See Trustee's Amended Compl.* at 8 [ECF No. 24].

During the time of the FINRA investigation, Apex Clearing Corporation ("Apex") commenced a FINRA arbitration proceeding against the Debtor, in which Apex alleged that the Debtor, as CEO and managing director of TWS Financial, LLC ("TWS"), assisted in arranging

a $3,200,000.00 "bad" trade in July 2012.[5]  *See* Apex Stmt. of Claim at 1, attached as Exh. D to *Affirmation Pursuant to Local Bankr. R. 9077-1* [ECF No. 2-1].  Specifically, Apex asserted that it was defrauded in the amount of $3,199,007.85 in connection with the purchase of stock. *See id.* at 5-6.  Apex alleged that the Debtor made material misrepresentations or omissions to Apex relating to the transactions.  *See id.*  Apex also asserted that the Debtor continued to make misrepresentations following the trade about his willingness and ability to pay for the transaction, and his ability to line up a buyer to pay for the shares.  *See id.*

Also at this time, Adam Bak, Adamba Imports International, Inc. ("Adamba"), and Concentpol Limited ("Concentpol") (collectively, the "Bak Entities") commenced an action against the Debtor and his wholly owned company, Innovest Holdings, LLC ("Innovest"), in the Supreme Court of the State of New York, Kings County.  *See generally* Bak Compl., attached as Exh. E to *Affirmation Pursuant to Local Bankr. R. 9077-1* [ECF No. 2-2].  The Debtor was the Bak Entities' stock broker.  *See id.* at 2.  The Bak Entities alleged, among other things, that the Debtor converted in excess of $4,409,830.00 by depositing funds belonging to the Bak Entities into a private bank account and wrongfully exercising control over those funds. *See id.* at 12-16.  The Bak Entities further alleged that the Debtor created false account statements and provided them to Mr. Bak.  *See id.* at 18.

On January 15, 2013, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.  *See* Case No. 13-22050 (RDD) [ECF No. 1].  On March 27, 2013, the Court entered an order directing the appointment of a Chapter 11 Trustee in the Debtor's case.  *See* Case No. 13-22050 (RDD) [ECF No. 27].  Marianne T. O'Toole was subsequently appointed as Chapter 11 Trustee of the Debtor's estate.  *See* Case No. 13-22050 (RDD) [ECF No. 28].  On

---

[5]     The trades involved TWS and one of its customers, MJW Investment Company.

April 15, 2013, a stipulation and order was entered converting the Debtor's case from Chapter 11 to Chapter 7 of the Bankruptcy Code and Ms. O'Toole was subsequently appointed as the Chapter 7 Trustee. *See* Case No. 13-22050 (RDD) [ECF Nos. 50, 51].

After the Debtor's petition was filed, various companies associated with the Debtor also sought bankruptcy protection. In May 2013, Innovest filed for Chapter 7 protection in this Court and Marianne O'Toole was appointed as the Chapter 7 Trustee of the Innovest estate. *See* Case No. 13-22748 (RDD) [ECF Nos. 1, 2]. Prior to its filing, the Debtor was the managing member and sole shareholder of Innovest and the Debtor signed the Innovest petition as its managing member. *See Trustee's Amended Compl.* at 6 [ECF No. 24]; *see also Innovest Petition*, Case No. 13-22748 (RDD) [ECF No. 1].

In August 2013, RML Development, Inc. ("RML") filed for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Western District of Tennessee. *See* Case No. 15-22066 (RDD) [ECF No. 1]. Prior to its bankruptcy filing, the Debtor was the sole shareholder of RML. *See Trustee's Amended Compl.* ¶ 144 [ECF No. 24]. But in the months leading to the Debtor's filing, it is alleged that the Debtor caused shares of stock in RML to be issued to Do and Folkes, thereby diluting his ownership interest in RML. *See Trustee's Compl.* ¶¶ 497-507, Adv. No. 14-08266 (SHL) [ECF No. 1]. On November 20, 2014, the Tennessee bankruptcy court entered an order transferring the RML bankruptcy case to the Southern District of New York. *See* Case No. 15-22066 (RDD) [ECF No. 284]. On May 19, 2015, an order was entered converting the case to Chapter 7 and Ms. O'Toole was appointed as the Chapter 7 Trustee for the RML estate. *See* Case No. 15-22066 (RDD) [ECF No. 334, 335]. Additionally, on May 31, 2013, a Securities Investor Protection Corporation ("SIPC") liquidation proceeding

7

was commenced against TWS in the Bankruptcy Court for the Eastern District of New York.
*See* Adv. No. 13-01152 (ESS).

After the bankruptcy filings, a Section 341(a) meeting of creditors was held in both the
Debtor's case and in the Innovest case. During the meeting, the Debtor plead the Fifth
Amendment in response to questions regarding his and Innovest's prepetition affairs, including
questions relating to offshore bank accounts. *See Supp. Affirmation With Respect to Roman
Sledziejowski* ¶ 20 and Exh. G [ECF No. 319, 319-1]. The Debtor subsequently informed SIPC
on June 25, 2015, that he would plead the Fifth Amendment in response to substantive questions
in the TWS liquidation proceeding. *See Trustee's Reply*, Exh. A [ECF No. 322]. The Trustee
represents that the Debtor has also failed to turn over documents and information relating to the
assets of his estate and the Innovest estate, failings which are set forth in detail in the Trustee's
submissions. *See, e.g.*, *Supp. Affirmation With Respect to Roman Sledziejowski* [ECF No. 319].
The Debtor also failed to appear at the continuation of both his and Innovest's Bankruptcy Rule
2004 examinations. *See Supp. Affirmation With Respect to Roman Sledziejowski* ¶¶ 49-50 [ECF
No. 319].

A variety of the Debtor's customers, including Apex, have filed adversary proceedings
seeking to deny the Debtor a bankruptcy discharge and alleging that he wrongfully took the
money that they had entrusted to him to invest. *See Apex v. Sledziejowski*, Adv. No. 13-08216
(SHL) (action seeking to find the debt of approximately $3,199,007.85 to Apex
nondischargeable pursuant to §§ 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code);
*Abraszewski v. Sledziejowski*, Adv. No. 13-08217 (SHL) (action seeking to find the debt of
approximately $1,138,741.00 to Abraszewski nondischargeable pursuant to §§ 523(a)(2),
523(a)(4), and 523(a)(6) of the Bankruptcy Code); *Mandelka, et al. v. Sledziejowski*, Adv. No.

13-08221 (SHL) (action seeking to find the debt of approximately $20,000,000.00 to defendants nondischargeable pursuant to §§ 523(a)(2), 523(a)(4), and 523(a)(6) of the Bankruptcy Code); *Wisniewski v. Sledziejowski*, Adv No. 13-08325 (SHL) (action seeking to find the debt of approximately $5,600,000.00 to Wisniewski nondischargeable pursuant to §§ 523(a)(2), 523(a)(4), and 523(a)(6) of the Bankruptcy Code).

In the Apex case, a dispute arose regarding the refusal of the Debtor to comply with discovery obligations and prior orders of this Court. *See Rule 7037 Motion for Sanctions*, Adv. No. 13-08216 (SHL) [ECF No. 34]. Specifically, Apex sought discovery relating to a personal email account that was allegedly used by the Debtor to conduct business and that was hosted by Runbox Solutions AS. *See id.* at 4. Over a period of months, counsel to the Debtor first claimed ignorance of the email account, then later stated that no emails were responsive, and then explained that any responsive emails had been automatically purged. *See id.* at 5. In response, Apex noted that Runbox's website states that it saves account data and emails after an account expires. *See id.* The Debtor subsequently represented that he had found a way to search the account for responsive emails, but that such search capabilities were limited. *See id.* at 7. Neither the Debtor nor his counsel ever directly asked Runbox for the responsive emails. *See id.* Apex ultimately sought the Debtor's authorization to obtain the emails directly from Runbox. But after countless communications, three discovery conferences and being ordered not less than four times to provide Apex with the authorization, the Debtor failed to fully comply with Apex's request and this Court's orders. *See id.* at 6-11; *see also* Adv. No. 13-08216 (SHL) [ECF Nos. 49, 50]. As a result, the Court entered an order sanctioning the Debtor with respect to the Runbox discovery issue. *See Order Granting Plaintiff's Motion for*

*Sanctions*, Adv. No. 13-08216 (SHL) [ECF No. 53]; Hr'g Tr. 31:5-49:4, May 16, 2014 (bench ruling regarding sanctions), Adv. No. 13-08216 [ECF No. 49].

In addition to the non-dischargeability actions filed by creditors, both the Chapter 7 Trustee and the United States Trustee filed complaints seeking to deny the debtor a discharge. *See Harrington v. Sledziejowski*, Adv. No. 14-08261 (SHL); *O'Toole v. Sledziejowski*, Adv. No. 14-08266 (SHL).  In its complaint, the U.S. Trustee alleged that the Debtor failed to maintain adequate books and records, provided false testimony under oath and failed to explain why his assets were insufficient to meet his liabilities.  *See U.S.T. Compl.* at 2, Adv. No. 14-08261 [ECF No. 1].  As the complaint alleged, despite multiple requests for information by the Chapter 7 Trustee, the Debtor failed to provide documents, repeatedly asserted his right to remain silent under the Fifth Amendment and admitted to shredding records regarding his personal financial affairs.  *See id.* at 14.  Despite being the 100% shareholder of both Innovest and RML prior to his bankruptcy filing, the Debtor stated that he did not have any records with respect to those companies and when asked about their financial affairs, he asserted his Fifth Amendment privilege.  *See id.* at 14-15.  The complaint also includes numerous allegations of misleading statements about the location and existence of records.  For example, the complaint stated that the Debtor testified at the Section 341 meeting of creditors that the books and records of Innovest were located at 739 Manhattan Avenue, Brooklyn, New York, but no records relating to the Debtor or his companies were located at the premises.  *See id.* at 13.  The U.S. Trustee complaint also cited the Debtor's failure to list certain transfers made to his parents, to Viet Ha Do and to Paul Folkes, on his Statement of Financial Affairs filed in connection with his bankruptcy proceeding.  *See id.* at 16-17.  The U.S. Trustee's complaint also asserted that the Debtor testified falsely under oath at the Section 341 meeting of creditors that he had no

10

ownership interests in property in Warsaw, Poland, despite the fact that RML had interests that could exceed $7 million.  *See id.* at 17.

The Chapter 7 Trustee's action seeking to deny a discharge was based, among other things, on the Debtor's transfer of assets within one year of his bankruptcy filing with an intent to hinder, delay or defraud creditors and the Debtor's failure to account for the loss of his assets.  *See Trustee's Compl.* at 57-58, 62-63, Adv. No. 14-08266 [ECF No. 1].  But like the U.S. Trustee, the Chapter 7 Trustee also focused heavily on the Debtor's failure to provide documents material to the administration of the bankruptcy estate, false oaths during the Rule 2004 examinations and otherwise.  *See id.* at 58-64.

Ultimately, the Debtor stipulated to the denial of his discharge, which rendered moot both the Chapter 7 Trustee and U.S. Trustee's adversary proceedings on dischargeability.  *See* Adv. No. 14-08266 [ECF No. 23]; Adv. No. 14-08261 [ECF No. 14].

B.  <u>This Adversary Proceeding</u>

On July 10, 2013, the Trustee commenced this adversary proceeding seeking to avoid various fraudulent transfers allegedly made by the Debtor to defendants Viet Ha Do (the Debtor's girlfriend), Paul Folkes (a business associate of the Debtor), Jerzy and Elzbieta Sledziejowski (the Debtor's parents), and Monika Wrobel (the Debtor's ex-wife), among others.  *See generally Trustee's Amended Compl.* [ECF No. 24].  On the same day that the adversary proceeding was filed, the Court granted the Trustee's request for an order temporarily restraining the defendants—including Ms. Do and Mr. Folkes—from transferring, hypothecating, encumbering or otherwise disposing of property of the Debtor's estate, including real property, personal property and cash.  *See* 2013 Injunction Order at 6-7 [ECF No. 38].  At that time, the Trustee stated her concern that the defendants were co-conspirators, nominees,

11

alter egos and/or conduits of the Debtor and were engaged in and/or complicit in the disposition of property of the estate to the detriment of the Debtor's creditors. *See Affirmation Pursuant to Local Bankr. R. 9077-1*, ¶¶ 118-123 [ECF No. 2].

At a hearing held on July 19, 2013, the Court granted the Trustee's request to convert the temporary restraining order into a preliminary injunction to prevent defendants—including Ms. Do and Mr. Folkes—from transferring, hypothecating, encumbering or otherwise disposing of property of the Debtor's estate, including real property, personal property and cash. This relief was memorialized in the 2013 Injunction Order. [ECF No. 38].[6]

During the course of this adversary proceeding, there have been numerous instances where various defendants have failed to comply with discovery. In fact, both Ms. Do and Ms. Wrobel have been held in civil contempt by this Court for failure to comply with discovery orders that required the disclosure of information relating to their assets and the assets of the Debtor's estate. *See Order Holding Viet Ha Do and RML Development, Inc. in Contempt* [ECF No. 175]; *Memorandum of Decision and Order Finding Viet Ha Do in Contempt* [ECF No. 263]; *Order Holding Monika Wrobel in Contempt* [ECF No. 179]. Specifically, Ms. Do has

---

[6]    The 2013 Injunction Order also required both Ms. Do and Mr. Folkes to provide the Trustee with a list of assets:

> (i) held individually by [her or him] for or on behalf of the Debtor and/or any entity controlled or owned by the Debtor; (ii) held indirectly by her for or on behalf of the Debtor and/or any entity controlled or owned by the Debtor; and/or (iii) transferred or conveyed to her by or on behalf of the Debtor and/or any entity controlled or owned by the Debtor during the period January 1, 2010 to the present by July 26, 2013.

*2013 Injunction Order* at 6-7 [ECF No. 38]. The 2013 Injunction Order also required the Debtor to "provide the Trustee with a full, complete and accurate list of all the Assets [as that term is defined in the Preliminary Injunction Order], whether held directly or indirectly and/or conveyed or transferred to any third parties during the period January 1, 2010 to the present. . . ." *Id.* at 3. The Trustee asserts that neither Ms. Do, Mr. Folkes nor the Debtor provided the Trustee with a list of such assets in accordance with the Preliminary Injunction Order. *See Trustee's Reply* at 3 [ECF No. 317]. At a hearing on July 10, 2015, the Court found that the Debtor was in violation of this disclosure requirement, but found that the issue was unresolved as to Mr. Folkes.

been found in civil contempt twice for failure to comply with orders of this Court relating to the Trustee's discovery requests. *See id.*

The first contempt finding as to Ms. Do related to discovery requests to RML, one of the defendants in this case. This included requests for records, including electronic records, that were located on the premises of RML's office at 32 Todd Hill Road, Building 2, Lagrangeville, NY. The Court entered several orders regarding these RML discovery issues that involved Ms. Do in her capacity as an officer of RML. These included an order of September 9, 2014 [ECF No. 157] that reflected the Court's bench ruling granting the Chapter 7 Trustee access to the Lagrangeville premises to inspect RML's books, records and computers. *See Order Directing Access to Books and Records of RML Development, Inc.* at 2 [ECF No. 157]. The September 9th Order specifically stated that no one was to alter or remove any books or records from the Lagrangeville premises, including any computers and electronic records, prior to the inspection by the Trustee. *See id.* The Court subsequently entered an order on November 7, 2014 [ECF No. 175] holding Ms. Do and RML in civil contempt for violating the September 9th Order because, when inspected by the Trustee, the Lagrangeville premises did not contain any of RML's computers, which appeared to have been purposefully removed. *See Order Holding Viet Ha Do and RML Development, Inc. in Contempt* at 2 [ECF No. 175].[7]

The second contempt finding against Ms. Do related to her personal discovery obligations. On January 21, 2015, counsel to the Trustee filed its First Affirmation of Non-

---

[7]    The November 7th Order provided that to purge the finding of civil contempt, Ms. Do and RML were required to do one of the following: (1) return the computers and any relevant records to the premises so that the Trustee could inspect them by November 11, 2014, or (2) deliver to the Trustee by November 11, 2014, any and all computers of or pertaining to RML, including those previously located at the Lagrangeville premises. *See Order Holding Viet Ha Do and RML Development, Inc. in Contempt* [ECF No. 175]. At a subsequent hearing, Ms. Do admitted to having certain computers and hard drives related to RML in her possession at her apartment in Brooklyn, *see* Hr'g Tr. 65:21-68:12, Dec. 5, 2014 [ECF No. 200-1], and was therefore able to comply with the November 7th Order but had failed to do so at that time. Indeed, Ms. Do testified at the December 5th hearing that she had discarded a laptop in the last six months that she used to conduct business for RML. *Id.* at 66:21-68:5.

Compliance [ECF No. 222] stating that Ms. Do had failed to produce responsive documents to certain of the Trustee's outstanding document requests that were the subject of an order dated September 22, 2014 directing that Ms. Do produce to the Trustee documents responsive to the Trustee's document request of January 30, 2014. *See Order Directing Discovery By Viet Ha Do* at 2 [ECF No. 162].[8] Ms. Do filed an objection to the First Affirmation. *See Viet Ha Do's Further Responses and Objections to Defendant's Demands Pursuant to Rules 26 & 34 of Fed. R. Civ. P.* at 2-3 [ECF No. 227]. On February 12, 2015, counsel to the Trustee filed a Second Affirmation of Non-Compliance [ECF No. 231], noting that five requests still remained outstanding. After Ms. Do responded to the Second Affirmation, s*ee Viet Ha Do's Response to Second Affirmation of Non-Compliance of Viet Ha Do* at 3 [ECF No. 235], the Court issued a bench ruling overruling Ms. Do's objections and granting the Trustee's request that the requested material be produced. *See* Hr'g Tr., March 27, 2015 [ECF No. 262]; *Order Directing Viet Ha Do to Comply with Prior Orders of the Court* at 2 [ECF No. 242].

After the filing of additional pleadings and further hearings,[9] the Court issued a written decision finding Ms. Do in civil contempt for failing to obey a Court order to provide discovery as to the five requests identified by the Trustee. *See O'Toole v. Wrobel, et al. (In re Sledziejowski)*, 2015 Bankr. LEXIS 1523 (Bankr. S.D.N.Y. May 4, 2015). The Court sanctioned

---

[8]     In response to each of these requests, Ms. Do objected and asserted either that responsive documents constitute "private and sensitive information unlikely to have any discoverable meaning in [sic] context of the complaint," that the Request "seeks production of private information unlikely to have any discoverable meaning in [sic] context of the complaint," that the Request was "overbroad and ambiguous and unrelated to the allegations in the complaint," or that responsive documents were "protected from disclosure by the attorney-client privilege, work product protection and/or other Applicable Rules." *See First Affirmation* ¶ 6 [ECF No. 222].

[9]     At a hearing held on April 23, 2015, the Trustee recounted additional information produced by Ms. Do on April 15, 2015. But it was clear that the additional production was very limited—both in kind and in duration of time. For example, Ms. Do produced only select credit card statements and bank statements. Even more troubling, these bank statements were produced with selective redactions, some of which the Trustee's counsel believed reflected wire transfers leading to other accounts; counsel's suspicion regarding the wire transfers was based on the failure to redact wire transfer fees that immediately followed the redacted items. Additionally, the statements produced do not provide any deposit information. *See O'Toole v. Wrobel, et al. (In re Sledziejowski)*, 2015 Bankr. LEXIS 1523 (Bankr. S.D.N.Y. May 4, 2015).

Ms. Do for noncompliance with her personal discovery obligations and awarded fees and costs to the Chapter 7 Trustee. *See id.* at *23. Ms. Do remains in civil contempt.[10]

## C. The Parties Against Whom the Injunction is Sought

There are five non-parties against whom relief is sought. But central to the dispute is defendant Viet Ha Do. Ms. Do is close with the Debtor on both a personal and professional basis. She is currently romantically involved with the Debtor. Hr'g Tr. 133:18-21, July 10, 2015. She was employed by TWS Financial LLC, against which the SIPC liquidation is proceeding in the Bankruptcy Court for the Eastern District of New York. *Do Decl.* ¶ 2 [ECF No. 316]. Ms. Do worked side-by-side with the Debtor at TWS before it was closed, and thereafter worked at RML office space on the premises of the Debtor's parents in Lagrangeville, NY. *See* Hr'g Tr. 72:1-3, Dec. 5, 2014. Ms. Do also maintains a personal and business relationship with the Debtor's parents and alleges to have multiple lending agreements with the Debtor's parents. *See Trustee's Motion* ¶ 11 [ECF No. 291]. Ms. Do was also involved in other companies owned by the Debtor prior to his bankruptcy filing. Among other things, Ms. Do is listed as an officer of RML, one of the defendants. *Do Decl.* ¶ 2 [ECF No. 316]. In the months leading to the Debtor's filing, the Debtor caused shares of stock in RML Development, Inc. to be issued to Ms. Do and Mr. Folkes, thereby diminishing his ownership interest in RML. *Trustee's Amended Compl.* ¶¶ 153-54 [ECF No. 24]; *see Answer of Viet Ha Do and Paul Folkes to the Amended Complaint and Affirmative Defenses* ¶¶ 153-54 [ECF No. 77]; *Answer and Affirmative Defenses of RML Development, Inc. to the Trustee's Amended Complaint* ¶ 154 [ECF No. 111].

---

[10]     The parties have recently adjourned hearings as to whether Ms. Do has purged her contempt, although the Court found she was still in contempt as of July 10, 2015 because responsive documents still remained to be produced. *See* Hr'g Tr. 28:20-45:16, July 10, 2015.

The interrelatedness of the defendants is suggested by events in the RML bankruptcy case, which is currently before Judge Drain of this Court. Shortly after the transfer of RML's bankruptcy case from Tennessee to this Court, questions arose regarding the source of funds for the payment of the $35,000 retainer for RML's proposed counsel. At a hearing held on February 17, 2015, Judge Drain noted that it was "important to trace where [the $35,000 retainer] came from" and that "[Do and Folkes] need to say where the money came from, how long they've had it." Case No. 15-22066 (RDD), Hr'g Tr. 3-4, February 17, 2015 [ECF No. 320]. The Court stated that "mechanically I think that you're probably going to have to attach the bank statement where the money came in" or "show it to the trustee then. Otherwise I can't approve the retention." *Id.* at 6. The Court concluded that RML was to "supplement with documents either privately provided to the trustee . . . or filed . . . by March 10th. And if it doesn't, then I think you should withdraw your application." *Id.* at 7. On March 12, 2015, Ms. Do responded by providing partially-redacted documents from JP Morgan Chase Bank, N.A. evidencing that $35,000.00 was transferred from an account in the name of Habringer ending in *6055 to an account in the name of Ms. Do on or about December 2, 2014. *See Trustee's Motion*, Exh. C [ECF No. 219-1].

Habringer is an entity owned and controlled by Ms. Do and Mr. Folkes. Habringer's sole shareholders are Ms. Do and Mr. Folkes. *See Do Decl.* ¶ 4 [ECF No. 316]. Ms. Do serves as Habringer's President, Treasurer and Secretary with Mr. Folkes serving as Habringer's Vice President. *See* Minutes of Organizational Meeting of Directors of Habringer, *Do Decl.* Exh. A [ECF No. 316-1]. Pojest is also controlled by Ms. Do and/or Mr. Folkes, as Pojest's sole member is Habringer. *See Do Decl.* ¶ 12 [ECF No. 316]. Based upon publically available

information, Pojest was incorporated in Tennessee on March 16, 2015. *See Trustee's Motion* ¶ 40 [ECF No. 291].

Documents show that Habringer disbursed some $1,108,315.00 between July 29, 2014 and June 10, 2015. *See Trustee's Reply*, Ex. D [ECF No. 322]. Of these disbursements, Habringer made significant transfers to persons associated with the Debtor, including not less than $355,000.00 to Roman Sledziejowski's parents, Jerzy and Elzbieta Sledziejowski, not less than $238,160.00 to Ms. Do and not less than $83,700.00 to Roman Sledziejowski's sister, Bernadeta Sledziejowski. *See id.* In addition, Mr. Folkes was paid the sum of $13,201.00. *See id.*

Habringer was incorporated in Tennessee on December 3, 2013, four months after RML filed for bankruptcy. *See id.* ¶ 32. Do states that Habringer was originally formed to bid on the property being sold in the RLM bankruptcy in Tennessee, although that effort was unsuccessful. *See Do Decl.* ¶¶ 6, 10. The proposed funding for Habringer's purchase of the RML property apparently was to come from Pawel Jankowski as managing partner of PPJ Spolka Jawna and/or an entity called PPJ Capital, Inc.[11] PPJ Spolka Jawna appears to be headquartered in Warsaw, Poland, while PPJ Capital, Inc. is located at 747 Third Avenue, 1st Floor, New York, New York 10017, which is the same street address as Habringer's mailing address with the Tennessee Secretary of State. *See Trustee's Stmt. in Further Support of Motion*, Ex. B [ECF No. 325-1]; *see also* Case No. 15-22066 [ECF No. 240-2].[12]

---

[11]    Annexed to Habringer's August 2014 offer for the RML properties were: (a) a "Letter of Intent" dated July 21, 2014 from a Pawel Jankowski, as Managing Partner of "PPJ Spolka Jawna" with an address at "ul. 29 listopada 18A/1U, 00-465 Warszawa, Polksa"; and (b) a print out from JP Morgan Chase Bank, N.A. evidencing that $300,000.00 was on deposit in a platinum business checking account in the name of "PPJ Capital, Inc." *See* Case No. 15-22066 [ECF No. 240-2].

[12]    In fact, the Trustee's counsel represented that an administrative assistant at his firm was informed that service of papers on PPJ Capital was accepted by Habringer at 747 Third Avenue, New York, New York.

In March 2015, Pojest, on behalf of its sole member Habringer, purchased an apartment complex located at 2603 Pojest Drive, Memphis, Tennessee.[13]  *See Trustee's Motion*, Exh. F [ECF No. 291-1].  Ms. Do executed the Assignment as president of Habringer and the document references a Term Note in the principal about of $2.4 million.  *See id.*  The Trustee states that before the purchase of this apartment complex, Ms. Do purchased an airline ticket for the Debtor who, on March 2, 2015, travelled to Warsaw, Poland.  *See Trustee's Motion* ¶ 42 [ECF No. 291].

According to Ms. Do, Habringer has received funding for its real estate purchases from two third parties:  PPJ Capital, Inc. and Edgewood Capital LLC.  *Do Decl.* ¶ 11 [ECF No. 316].  Ms. Do explains that PPJ Capital, Inc. is wholly owned by Pawel Jankowski and Maria Jankowska, Polish citizens that Do claims to know socially.  *Id.* ¶ 7.  In her declaration, Ms. Do states, "[t]he Jankowskis have assured me that their investment fund has no connection to Roman whatsoever.  Thus, to the best of my knowledge, none of the funds received by Habringer have come from the bankruptcy estates of Roman Sledziejowski or RML."  *Id.* ¶ 8.  Ms. Do does not provide any other information or detail about the source of funding for these real estate deals or the nature of the relationship between the Jankowskis and the Debtor.

In addition, Ms. Do asserts that PPJ Capital has agreed to invest up to $5 million in Habringer in return for interest in its loans and an unconditional right to convert a portion of the debt into common stock of Habringer.  *Id.* ¶ 9.  Do also states that Habringer purchased one of

---

Specifically, information was provided that Habringer is the name that PPJ Capital is listed under at 747 Third Avenue.  *See* Decl. of Angela Colucci ¶¶ 3-4 [ECF No. 325-1].

[13]     In January 2015, Habringer also submitted a letter of intent to purchase a 332-unit apartment complex in midtown Memphis, Tennessee, which was accepted by the seller in March 2015.  *See Do Decl.* ¶ 15.  Additionally, in May 2015, Habringer signed a contract to purchase a commercial office building in Memphis, Tennessee for $800,000.  *See Do Decl.* ¶ 14.  In addition, Habringer intends to purchase a 180-unit apartment complex in West Memphis, Arkansas from MLR Development, Inc.  *See Do Decl.* ¶ 16.  Ms. Do purchased one additional property in her own name: Unit 503 at 95 South Main Street, Memphis, Tennessee 38103 on or about February 27, 2015 for $296,500.00.  *See Trustee's Motion*, Exh. E [ECF No. 291-1].  That property has a mortgage against it in the amount of $222,375.00 in favor of Financial Federal Bank.  *See id.*  The Trustee believes that Ms. Do made a cash down payment of $74,125.00 for the property.  *See Trustee's Motion* at ¶ 38 [ECF No. 291].

its real estate assets with funding in part from Edgewood Capital LLC, which is a hedge fund

established by Thomas McDevitt and managed by Michael House. *Id.* ¶ 11. This is consistent

with documents turned over to the Trustee by Habringer on June 26, 2015, which appear to

show that not all of Habringer's funds were derived from PPJ. Specifically, Habringer

documents show receipt of $1,136,962.00 by Habringer between July 29, 2014 and June 10,

2015, but only $525,000.00 of which was clearly received from PPJ Capital. *See Trustee's*

*Reply*, Exh. D [ECF No. 322].

　　　Ms. Do supplied several promissory notes between Habringer and PPJ Capital and

security agreements executed by Habringer on behalf of PPJ Capital. *See Do Decl.*, Exh. A

[ECF No. 316-1, 316-2]. The promissory notes attached to the Do Declaration are dated between

July 29, 2014 and May 6, 2015 and total $1,975,000.00. Six of the promissory notes provide for

a security agreement to be entered the same day on behalf of lender PPJ Capital:

> <u>Security</u>. This Note is secured by the following: (a) *that certain Security Agreement dated the same date hereof and entered into between the Borrower and the Lender and granting the Lender a lien and security interest in the personal property and collateral identified and described therein.* The terms, conditions and other provisions of the and the Security Agreement are incorporated herein by reference and made a part hereof, and all the obligations of the Borrower under the the [sic] Security Agreement shall be the obligations of the Borrower herein and all the rights and benefits of the Lender under the Security Agreement shall be the rights and benefits of the Lender herein. The Security Agreement and all other documents and instruments securing this Note are collectively referred to herein as the "Security Documents."

*See Do Decl., Exh. B* [ECF Nos. 316-2 at 4, 8, 12, 20, 28, 32] (emphasis added). All of the

promissory notes are signed with the name Pawel Jankowski as president of PPJ Capital and Viet

Ha Do as president of Habringer. *See id.* But Ms. Do did not provide any additional documents

that evidence any corresponding security agreements that were contemporaneously entered into

between Habringer and PPJ. Rather, on June 19, 2015, seven days after the Trustee's Motion

was filed, Habringer, through Do, executed an Assignment of Security Agreement and a Security

Agreement in favor of PPJ Capital in the amount of $1,975,000.00.  *See Do Decl.* Exh. B [ECF

No. 316-2 at 36-57].  PPJ Capital did not execute either of these security agreements, though the

agreements are signed by Viet Ha Do as president of Habringer.

Additionally, two of the promissory notes attached to the Do Declaration provide

additional rights to lender PPJ Capital:

> Security. This Note is secured by the following: (a) *that certain Deed of Trust dated the same date hereof and entered into between the Borrower and the Lender and granting the Lender a lien and security interest in the real property, fixtures and other collateral identified and described therein;* (b) that certain  Security Agreement and entered into between the Borrower and the Lender and granting the Lender a primary lien and security interest in the personal property and collateral  identified and described therein, including but not limited to the membership interest of the borrower in Pojest Apartments, LLC. The terms, conditions and other provisions of the Deed of Trust and the Security Agreement are incorporated herein by reference and made a part hereof, and all the obligations of the Borrower under the Deed of Trust and the Security Agreement shall be the obligations of the Borrower herein and all the rights and benefits of the Lender under the Deed of Trust and the Security Agreement shall be the rights and benefits of the Lender herein. The Deed of Trust, the Security Agreement and all other documents and instruments securing this Note are collectively referred to herein as the "Security Documents"; [sic]

*See Do Decl.* Exh. B [ECF No. 316-2 at 16, 24] (emphasis added).

The submissions from Polish counsel provide some additional information, but it is

somewhat contradictory.  The legal papers refer solely to PPJ Spolka Jawna.  They state that PPJ

Spolka Jawna is registered in the Republic of Poland and that "Pawel Jankowski, Maria

Jankowska and PPJ sp.j. do not have an estate in the US and do not conduct business in the US."

*See* Opp. of Pawel Jankowski, Maria Jankowska, PPJ Spolka Jawna at 3, 5, 6 [ECF No. 332].

But the Jankowskis' declaration represents that PPJ Capital—a Delaware corporation—is

involved in business dealings with Habringer.  *See Jankowski Decl.* at 3 [ECF No. 332-2].

According to the Jankowskis, PPJ Capital holds equity in Habringer:

> In connection with debt provided to Habringer Group, PPJ Capital, Inc. holds a recorded security interest on all assets of Habringer and holds an unconditional right to convert

20

part of the debt provided to Habringer Group into a 70% equity stake in Habringer Group. This was our requirement before investing with Habringer Group.

*Jankowski Decl.* at 3 [ECF No. 332-2].[14] According to a purported "Letter of Intent" dated October 31, 2014, it was PPJ Spolka Jawna that agreed to "provide additional investment of $1,000,000.00" to Habringer to purchase properties. *See Trustee's Reply*, Exh. C [ECF No. 322]. That letter states that PPJ Capital is a subsidiary of PPJ Spolka Jawna. *See id.*

## DISCUSSION

1. Preliminary Injunction Standard

It is well established that "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). The Second Circuit has described the test for injunctive relief as "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Vantico Holdings S.A. v. Apollo Mgmt.,* 247 F. Supp. 2d 437, 451 (S.D.N.Y. 2003) (quoting *AIM Int'l Trading, LLC v. Valcucine SpA.*, 188 F. Supp. 2d 384, 387 (S.D.N.Y. 2002)). "Injunctive relief 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Air Line Pilots Ass'n v. U.A.L.*, 2011 WL 4543820 at *1 (E.D.N.Y. Sept. 29, 2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). In the Second Circuit, all these principles have been reiterated time and time again, with the Circuit noting the broad level of discretion vested with the trial court in determining whether the extraordinary remedy of injunctive relief is appropriate in the context of antitrust litigation. *See Moore v. Consol. Edison*

---

[14]     The Jankowskis provide no information or documentation to support that this security interest is recorded or the date that such recordation took place.

21

*Co. of N.Y., Inc.,* 409 F.3d 506, 511 (2d Cir. 2005); *Green Party of N.Y. v. N.Y. State Bd. of Elections,* 389 F.3d 411, 418 (2d Cir. 2004); *Columbia Pictures Indus., Inc. v. Am. Broad. Cos.,* 501 F.2d 894, 897 (2d Cir. 1974).

Federal Rule of Bankruptcy Procedure 7065 addresses injunctive relief by incorporating Federal Rule of Civil Procedure 65 in adversary proceedings, except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor-in-possession without compliance with Rule 65(c), which addresses the security required by a movant.

It is well established that a court "cannot lawfully enjoin the world at large." *New York v. Operation Rescue Nat'l,* 80 F.3d 64, 70 (2d Cir. 1996). But under Rule 65(d)(2), certain non-parties may be bound by an injunction against a party. Under the Rule, parties bound to an order for injunctive relief include "the following who receive actual notice of [the order] by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2); *see Cardell Fin. Corp. v. Suchodolski Assocs.,* 2012 U.S. Dist. LEXIS 188295, at *135-37 (S.D.N.Y. July 17, 2012). This Rule codifies the common-law principle that non-parties to a proceeding may also be bound by an injunction, and held in contempt for violations thereof, where such non-parties are "legally identified with the party named in the order or aids and abets the party named in the order in its noncompliance." *GMA Accessories, Inc. v. Eminent, Inc.,* 2008 U.S. Dist. LEXIS 55107, at *41 (S.D.N.Y. May 29, 2008). The determination as to whether or not a non-party "not named in an injunctive decree may nevertheless be bound by it depends on the facts of each case." *Id.* at *44 (quoting *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 129 (2d Cir. 1979)).

A non-party may be found to be "legally identified" with an enjoined party where, "as a practical matter, the [two individuals] are one and the same," *Spectacular Venture L.P. v. World Star Int'l, Inc.*, 927 F. Supp. 683, 684-85 (S.D.N.Y. 1996), or where there is a substantial continuity of identity between the two. *Operation Rescue*, 80 F.3d at 70. "Courts in this Circuit have also found a non-party to be in active concert or participation with an enjoined party where the non-party is controlled and used by the enjoined party 'as a device to circumvent the Court's orders.'" *GMA Accessories*, 2008 U.S. Dist. LEXIS 55107, at *42 (quoting *Cablevision Sys. Corp. v. Muneyyirci*, 1995 WL 362541, at *2 (E.D.N.Y. June 2, 1995)). Thus, where an enjoined party seeks to "circumvent an injunction through the instrumentality of a shell company, an agent, or a successor in interest, the injunction will reach the conduct of the non-party." *GMA Accessories*, 2008 U.S. Dist. LEXIS 55107, at *42 (citing *Operation Rescue*, 80 F.3d at 70; *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973); *Cablevision Sys.*, 1995 WL 362541, at *2).

Courts in this Circuit have found "active concert" between non-parties and already-enjoined parties in cases where an enjoined party is substantially intertwined with a non-party, including the shared occupation of office space, payment of employee expenses between the non-party and enjoined party, considerable control by the enjoined party over the non-party's operations, and other substantial interconnections between the enjoined party and non-party. *See GMA Accessories, Inc.*, 2008 U.S. Dist. LEXIS 55107, at *43-44 (citing *Marshall v. Blasters, Drillrunners, and Miners Union, Local 29*, 1980 U.S. Dist. LEXIS 10971, at *3 (S.D.N.Y. Apr. 14, 1980); *SEC v. Platinum Inv. Corp.*, No. 02 Civ. 6093 (JSR) (S.D.N.Y. Mar. 25, 2003) (slip op.) (finding family member to have acted in concert with enjoined party where party with

23

frozen assets transferred assets to family members, who assisted in the transfer and subsequent

withdrawal of funds)).

2. <u>The Court Will Grant a Preliminary Injunction Against Habringer, Pojest and PPJ Capital</u>

The Court concludes that a preliminary injunction should be entered to enjoin Habringer

and Pojest from the dissipation of assets from the Debtor's estate.  It is undisputed that both of

these entities are wholly owned and controlled by defendants Ms. Do and Mr. Folkes, both of

whom are expressly covered by the preliminary injunction entered in 2013.  Accordingly, one

can argue that these two entities are, in fact, already covered by the injunction given the terms of

Rule 65(d)(2) because they are "legally identified" with the two defendants and clearly

controlled by those two defendants against whom an injunction already exists.  But to the extent

there is any doubt, the Court concludes that the injunction should cover Habringer and Pojest as

they are the means by which defendants Ms. Do and Mr. Folkes are conducting business, and

that business includes the disposition of significant assets.  Moreover, the same rationale that

existed in 2013 for the injunction against Ms. Do and Mr. Folkes still exists today, and the Court

notes that neither Ms. Do nor Mr. Folkes has appealed the 2013 Injunction.  *See Anderson v.*

*Boston*, 244 F.3d 236, 239 (1st Cir. 2001) (failure to appeal denial of preliminary injunctive

relief supports an inference that serious harm does not exist).

Moreover, the events in this lawsuit and bankruptcy only confirm the legitimacy of the

initial concerns in 2013 that led the Trustee to seek the original preliminary injunction.  Despite

two years of litigation, the Trustee appears not much closer to a clear picture of the assets of the

defendants and whether any of these assets are derived from the Debtor's estate.  The Court has

issued two civil contempt findings against Ms. Do for her failure to provide documents requested

in discovery about her assets and the assets of defendant RML.  *See generally O'Toole v.*

24

*Wrobel, et al. (In re Sledziejowski)*, 2015 Bankr. LEXIS 1523 (Bankr. S.D.N.Y. May 4, 2015).  It

is a bitter irony that, despite her utter failure to cooperate in discovery, Ms. Do now complains

about the requested injunction when the relief requested is necessary in large part because of a

lack of transparency about assets.  *See Baldiga v. Desai (In re Desai),* 2012 WL 6737483, at *5

(Bankr. D. Mass. Dec. 28, 2012) (noting that injunction against transfer of assets was supported

by debtor's lack of candor in required disclosures in bankruptcy, scope and complexity of

transactions involving defendants, interfamilial nature of those transactions, their lack of

transparency and inability to rely on documentation to definitively determine terms of many of

those transactions); *cf. In re Lin*, 499 B.R. 430, 438 (Bankr. S.D.N.Y. 2013) (noting that

creditors rely on transparency in bankruptcy proceedings).

    The Court also notes that other parties have stonewalled the Trustee's efforts to gain

information about potential assets of the estate.  The Court has found another defendant—the

Debtor's former spouse Monika Wrobel—in civil contempt for a similar failure to provide

information in discovery about her assets.  *See* Adv. No. 13-08317 [ECF No. 179].  Similarly,

the Debtor was sanctioned for failure to cooperate in discovery regarding an email account with

a company called Runbox that he used to conduct business.  *See* Adv. No. 13-08216 [ECF No.

53].  The Debtor has also invoked his Fifth Amendment rights in refusing to answer questions

about his assets, both to the Trustee and to FINRA, which has been investigating his conduct as a

broker-dealer.  Thus, despite significant efforts, the Trustee is not much closer now than two

years ago to having a fulsome picture of the Debtor's assets and where they went.  This has

given the Trustee—and the Court—good cause to be concerned that assets of the estate will be

dissipated absent an appropriate injunction.  Given all these facts then, the Court finds that the

Trustee has made a strong showing that, absent this requested relief, the estate faces a strong

possibility of irreparable harm, which is the most important prerequisite for injunctive relief.  *See*

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); s*ee also Ranger*

*Oil Ltd. v. Petrobank Energy & Res. Ltd.*, 2000 U.S. Dist. LEXIS 7571, at *22 (S.D.N.Y. May

23, 2000).  The irreparable harm requirement asks whether the alleged injury to be suffered is

likely and imminent, as opposed to remote or speculative, and whether it is capable of being fully

remedied by money damages.  *See Faiveley*, 559 F.3d at 118.  If assets of the estate are indeed

with the defendants and entities controlled by the defendants such as Habringer and Pojest,

money damages will not be an adequate remedy if those assets are dissipated as the Trustee

fears.  *See Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*, 162 B.R. 935, 944 (Bankr.

S.D.N.Y. 1994) (noting that under Section 105 a court can enjoin an activity that impairs the

court's jurisdiction with respect to a case before it); *Ryan v. Smith (In re Raymark Indus., Inc.)*,

228 B.R. 524, 527 (Bankr. D. Conn. 1999) (entering injunction against transfer of defendants'

assets and noting that injunctive powers under Section 105 permitted the enjoining of activities

that would "defeat or impair the jurisdiction of [the] underlying bankruptcy case.") (quoting

*Barney's Inc. v. Isetan Co. (In re Barney's, Inc.)*, 200 B.R. 527, 533 (Bankr. S.D.N.Y. 1996)).

In addition, the Court finds that the lack of corporate formality between all these parties

is a strong factor that supports the requested relief.  The notion that the financial affairs of

Habringer are entirely unrelated to the Debtor's estate is severely undermined by the fact that

Habringer made significant disbursements to parties closely associated with the Debtor,

including a total of approximately $690,061.00 disbursed to Roman Sledziejowski's parents, Ms.

Do, Roman Sledziejowski's sister, and Mr. Folkes.  These payments are very difficult to square

with the notion that Habringer is engaged only in arms-length real estate transactions with third

parties.  *See Sharp v. SSC Farms I, LLC (In re SK Foods, L.P.)*, 2010 WL 9476207, at *10

26

(Bankr. E.D. Cal. April 5, 2010) (granting trustee's motion for preliminary injunction and noting significant number of related party transactions where funds were diverted from debtors to defendants without adequate explanation); *cf. Seidel v. Warner (In re Atlas Fin. Mortg., Inc.)*, 2014 WL 172283, at *5 (Bankr. N.D. Texas Jan. 14, 2014) (noting that party did not understand the legal separateness of the entities that he owns).

At the hearing, Ms. Do sought to provide a satisfactory explanation about these significant expenditures. But she only addressed the payments to Mr. Sledziejowski's parents and her testimony was simply not credible. *See* Hr'g Tr. 91:16-92:13, July 10, 2015. At least some of this money was used to help fund the settlement that Mr. Sledziejowski's parents entered into with the Trustee in this case. *See id.* at 102:1-5. Ms. Do testified that the loan made sense because Habringer could receive more interest than it would leaving the funds in the bank. *See id.* at 92:4-10; 101:3-7. As for the prospect of payment, Ms. Do said that the company was interested in a piece of property owned by Mr. Sledziejowski's parents through MLR Development, Inc. and appeared to believe that the loan was a way to further that interest. But the loan was in no way tied to the property in question. *See id.* at 99:23-101:7. There was no evidence of a lien or other encumbrance on the property on behalf of Habringer nor evidence of the value of the property to justify the loan. As presented, the loan would seem dubious for a company that purports to be in the real estate business, and not in the business of making loans to individuals. *See In re SK Foods*, 2010 WL 9476207, at *10 (granting injunctive relief and noting instances where even if money could be followed from one entity to another, often the underlying purpose of the transactions could not be determined or substantiated).

The disbursements to Roman Sledziejowski's parents, Roman Sledziejowski's sister, and Mr. Folkes also seem at odds with Ms. Do's sophisticated business background. She has an

27

MBA from NYU and business experience as the president of a number of companies, including

Habringer. *See* Hr'g Tr. 129:20-130:1, July 10, 2015. She is familiar with the need to keep

appropriate business books and records and the requirement of seeking board approval for

significant transactions. *See id.* at 130:11-131:8. But other than bare bones promissory notes,

she did not provide any documentation to justify the business reasons behind the expenditures of

these funds, an explanation that one would expect to exist for such significant corporate

expenditures.

Given the entire record, the Court also finds that the balance of the hardships and the

public interest favor the injunction against Habringer and Pojest. Creditors have suffered great

losses in this case, with the Trustee providing a rough estimate at the hearing of at least $12

million and likely much more. The public interest favors the Trustee's reasonable efforts to

recover assets of the estate to provide a recovery to these parties who have suffered great

monetary loss. *See In re SK Foods*, 2010 WL 9476207, at *20 (noting that there is a public

interest in preserving the assets of the debtor's estate for the benefit of its creditors).

As to the likelihood of success on the merits, the Court finds that the evidence presented

thus far to the Court presents a disturbing picture of what could reasonably be described as a

concerted effort to avoid providing information about potential assets of the estate, as well as the

movement of assets without a reasonable explanation. This sufficiently supports the allegations

in the Trustee's complaint to justify the injunctive relief requested, in light of the Court's

determination as to the other factors.

The Court also concludes that it is appropriate to extend the injunction to PPJ Capital to

prevent the dissipation of any estate assets. The facts recounted above support this conclusion.

But other evidence does as well. As a threshold matter, the Court observes that Habringer and

PPJ Capital share a virtual office address with defendant Do.  Notwithstanding this fact, Habringer and Pojest argue that PPJ Capital is an unrelated third party whose funds should be considered untainted and thus should not be fair game for the injunction.  They point to the statement by the Jankowskis that "to the best of our knowledge, the only capital that Habringer Group ever received came from debt provided to it by PPJ Capital, Inc." and that they "are fully aware of the investments that Habringer Group is pursing and [] have full confidence in the business acumen and judgment of Viet Ha Do and Paul Folkes."  *Jankowski Decl.* at 2-3 [ECF No. 332].  But using the funds of PPJ, Habringer made the significant disbursements of approximately $690,061.00 to Roman Sledziejowski's parents, Roman Sledziejowski's sister, Ms. Do and Mr. Folkes.  *See Trustee's Reply*, Exh. D [ECF No. 317].  For the same reasons explained above, these payments are very difficult to square with the notion that Habringer and PPJ are engaged simply in arms-length transactions to purchase real estate.  *See In re SK Foods*, 2010 WL 9476207, at *10.

Indeed, there is other evidence which calls into question the dealings between Habringer and PPJ Capital.   PPJ Capital did not appear or submit anything in these proceeding, despite being served by the Trustee.  *See Affidavit of Service* [ECF No. 321].  The submissions from Polish counsel mention PPJ Capital but were not submitted on behalf of that entity.[15]  In fact, that submission stated that the Jankowskis do not do business in the United States, a statement that cannot be reconciled with the existence of PPJ Capital, which is a Delaware entity, or with the papers submitted by Ms. Do, Habringer and Pojest, which state that PPJ Capital is wholly owned by the Jankowskis and that PPJ Spolka Jawna created PPJ Capital for the purpose of doing

---

[15]     As no party objected to the Court considering the submission from Polish counsel, the Court considered these documents. *See In re SK Foods*, 2010 WL 9476207, at *14 (noting that trial court can give even inadmissible evidence some weight when it serves the purpose of preventing irreparable harm before trial) (citing 11 Wright & Miller, Federal Practice and Procedure §2949 (3d ed. 1973)).

business in the United States.  *See Jankowski Opp.* at 6 [ECF No. 332]; *Do Decl.* at 3 [ECF No.

316]; *Opp. To Trustee's Motion* at 8 [ECF NO. 315].  Moreover, the evidence before the Court

as to PPJ Capital shows a striking disregard for corporate formality and raises serious questions

about those dealings.  During the July 10, 2015 hearing, for example, Ms. Do testified that some

of promissory notes for PPJ Capital funding of Habringer were executed by Pawel Jankowski,

Sr. while others were executed by Pawel Jankowski, Jr.  *See* Hr'g Tr. 109:9-16, July 10, 2015.

Specifically, Ms. Do testified that the May 2015 promissory note was executed by Pawel

Jankowski, Sr. while he was visiting the United States.  *See id.* at 106:24-107:7.  All of the

promissory notes, however, have the same signature. *See* Exh. B to the *Do Decl.* at 4-35 [ECF

No. 316-2].  Furthermore, the May 2015 promissory note signature is entirely different from the

notarized signatures of Pawel Jankowski, Sr. that appear on every page of the papers submitted

by Polish counsel.  *Compare Jankowski Opposition*, dated July 7, 2015 [ECF No. 332] *with* Exh.

B to the *Do Decl.* at 35 [ECF No. 316].  These inconsistencies undermine the credibility of the

explanations provided about the Habringer transactions.

    But even taking the signatures of the son at face value, there are unanswered questions.

While Ms. Do testified that Mr. Jankowski's son had signed such promissory notes on behalf of

his father, *see* Hr'g Tr. 109:9-16, 110:18-111:3, July 10, 2015, there was no documentary

evidence that he was authorized to do so.  One would expect such documentary evidence given

the amount of funding provided by PPJ Capital to Habringer, which amounted to almost $2

million when counting the direct funding and indirect funding through an entity called Chicago

Title.  *See* Hr'g Tr. 88:10-20, July10, 2015; *Trustee's Reply*, Exh. D [ECF No. 322].  Finally, the

Court notes that the first promissory note for funding PPJ Capital funding took place before

Habringer had any assets; the only consideration received by PPJ Capital appears to have been a

right to take shares of an assetless entity, Habringer. There was no evidence of any personal guarantees or other sources of recovery available to PPJ Capital for this promissory note. Thus, it appears that PPJ Capital would have been unprotected if Habringer could not pay this obligation back, a very odd way to structure an arms-length business transaction. No satisfactory reasons were provided by Ms. Do or Polish counsel to explain this. *See In re SK Foods*, 2010 WL 9476207, at *10.

The situation becomes even more concerning given the Debtor's involvement in the business dealings between Habringer and PPJ Capital. Ms. Do represented that she was informed by the Jankowskis that the money given by PPJ Capital to Habringer was not money from Roman Sledziejowski and that the Jankowskis themselves claim that they do not have any assets of the Debtor's estate. *See Do Decl.* ¶ 8 [ECF 316]. But Ms. Do conceded on the stand that she did not know the source of PPJ Capital's money. *See* Hr'g Tr. 89:11-18, July 10, 2015. In fact, the Debtor has known the Jankowskis since at least September 2011. *See Trustee's Reply*, Exh. F [ECF No. 322] (attaching copies of pre-petition email exchanges between Roman Sledziejowski and Pawel Jankowski obtained from SIPC); *see also Jankowski Decl.* at 3 [ECF No. 332-2] (describing social relationship with Roman Sledziejowski of over ten years). Moreover, she testified that Mr. Sledziejowski has been present for a number of the Habringer meetings between her and the Jankowskis. *See* Hr'g Tr. 94:7-18, 107:12-15, July 10, 2015. She has not offered an explanation why he would be present for these meetings. The Court finds that her live testimony about Mr. Sledziejowski's lack of involvement in Habringer not to be credible for a variety of reasons, including her demeanor on the witness stand while being questioned about this subject, the undisputed presence of Mr. Sledziejowski with Ms. Do at meetings with

the Jankowskis, Ms. Do's ongoing romantic relationship with Mr. Sledziejowski and her prior involvement with his business entities such as RML and TWS.[16]

Last but not least, the Court is concerned by the fact that after the filing of the motion, Habringer provided a security interest on all its assets to PPJ Capital, which may in fact have the practical effect of transferring the value of Habringer's assets to PPJ Capital. This transaction highlights the Trustee's concern about the many entities in play in this case and the real fear that assets may be moved beyond the reach of the Court before any determination can be made on the merits of the Trustee's claims in this lawsuit. *See In re SK Foods*, 2010 WL 9476207, at *19-20 (noting that prior misconduct in hiding or depleting assets is extremely relevant to concern that defendants might conceal or dissipate assets again and is properly considered in granting an injunction) (citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003)). While Ms. Do claimed she could not remember exactly when she became aware of the Trustee's motion, she was forced to concede on cross examination that she retained new counsel to present her for this matter on June 17th, which was two days before Habringer granted the security interest to PPJ Capital. *See* Hr'g Tr. 115:5-116:6, July 10, 2015.

---

[16]    The Trustee's amended complaint alleges, among other things, fraudulent transfers by the defendants under a variety of legal theories, as well as a claim that defendant RML is the alter ego of the Debtor. "[F]raudulent intent, by its very nature, is rarely susceptible to direct proof . . . ." *Marine Midland Bank v. Murkoff,* 508 N.Y.S.2d 17, 21 (App. Div. 1986), *appeal dismissed,* 69 N.Y.2d 875 (1987)). Recognizing the difficulty in providing such direct proof, courts "allow plaintiffs to provide allegations that amount to circumstantial evidence from which the requisite intent may be inferred." *Official Comm. Of Unsecured Creditors of Vivaro Corp. v. Leucadia Nat'l Corp. (In re Vivaro Corp.)*, 524 B.R. 536, 554 (Bankr. S.D.N.Y. 2015). "Under New York law, such circumstantial evidence is known collectively as the 'badges of fraud.'" *Id.* These may include: "a close relationship between the parties to the conveyance; inadequacy of consideration received; retention of control of the property by the transferor; suspicious timing of the conveyance after the debt was incurred; the use of fictitious parties; information that the transferor was insolvent as a result of the conveyance; the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; the general chronology of the events and transactions under inquiry; a questionable transfer not in the usual course of business; and the secrecy, haste, or unusualness of the transaction." *Id.* Many of these badges of fraud are present in the allegations in the Trustee's complaint as well as in the evidence presented in support of the motion, including most notably the close relationship between the parties, questionable transfers that do not appear to be in the ordinary course of business, and the unusual nature of the transactions.

Given the evidence before the Court, the Court also is granting the Trustee's request to expand the injunction beyond a facial restraint of estate assets. The Court is requiring that on a going-forward basis Habringer Group Inc. and Pojest Apartments, LLC are restrained and enjoined from transferring, hypothecating, encumbering or otherwise disposing of any assets valued at more than $5,000 without Court approval, which is contingent upon these being ordinary course business expenses such as employee salaries or debt service on already existing debt. To accomplish these ends, the Court orders that these two entities submit a proposed budget setting forth all income and expenses. The Court notes that the use of such budgets is not uncommon in bankruptcy court, particularly instances where a lender has an interest in cash collateral being used by a debtor or a debtor is obtaining new financing to be used in a particular way. Given the Court's familiarity with the use of such budgets, it is satisfied that this requirement here can be met here without an undue burden. *See In re SK Foods*, 2010 WL 9476207, at *10 (granting temporary restraining order freezing assets that excluded payment of certain limited expenses incurred in the ordinary course of business, such as regular salaries); *Dillworth v. Leary (In re Infolink)*, 2011 WL 1841534, at *3 (Bankr. S.D. Fla. May 13, 2011) (noting that preliminary injunction did not prevent third party business from proceeding but merely prevented transfer and diversion of assets of debtor's estate).

At the hearing, counsel for Habringer and Pojest noted Habringer's desire to refinance its debt with Edgewood Capital LLC and argued that an injunction here would unduly burden Habringer by restricting it from taking that important step. *See* Hr'g Tr. 66:22-67:3, July 10, 2015. But the Court agrees with the Trustee that no such financing is imminent given that Habringer is required to pay interest on this debt for at least another seven months. *See id.* at 67:9-17. In any event, Habringer can seek approval for any refinancing transaction or can seek

33

to modify the injunction as appropriate when the time comes. *See In re Atlas Fin.*, 2014 WL 172283, at *6 (finding any prejudice from injunction is dissipated where party has opportunity to seek modification of injunction if party can show legitimate reasons for the transfer). In the meantime, the Court finds this restriction to be necessary and appropriate, particularly given the concerns raised by granting of a security interest in Habringer's equity on behalf of PPJ Capital after the Trustee's motion was filed.

As to Pawel and Maria Jankowski and their company, PPJ Spolka Jawna, the Court declines to enter any relief against these Polish person and entity at this time. Unlike for Habringer and Pojest, the Court concludes that the Trustee at this time has not satisfied its burden for obtaining an injunction against these three persons, all of whom reside in Poland.[17] The Court notes that the Trustee appears not to have ever sought an injunction against PPJ Spolka Jawna, which appears to have only been identified within the last week as a business entity involved with Habringer, Pojest and Ms. Do.

As to PPJ Capital, however, the Court finds that additional injunctive relief is appropriate given all the record before it. Based on the evidence, there are serious and legitimate concerns about the arms-length nature of the business dealings between PPJ Capital, Habringer and Ms. Do. PPJ Capital is hereby required to provide contemporaneous disclosure of any instance where it transfers, hypothecates, encumbers or otherwise disposes of any assets valued at more than $5,000. It shall also provide disclosure of any receipt of income, cash or value above that amount. The disclosures must take place within 24 hours of the event taking place and such disclosure shall be made to the Trustee and the U.S. Trustee. To the extent that such disclosure would be made less burdensome by the preparation and use of a budget, the Court invites the use

---

[17] As fifteen days have passed since the issuance of the temporary restraining order, any temporary restraining order against the Jankowskis is no longer in effect.

of that mechanism.   The Court finds such an injunction to be a limited but appropriate protection

in this case to protect against the potential dissipation of estate assets.   *See In re Atlas Fin.*, 2014

WL 172283, at *6 (finding that without preliminary injunction, party would likely continue to

make improper or inadequately documented transfers, which would dissipate assets prior to trial

without business justification).

    Finally, the Court addresses two legal arguments raised by the injunction.   First, the

papers submitted by Polish counsel raise the doctrine of *forum non conveniens*.   The papers

argue that because the Jankowskis are citizens of Poland who reside in the European Union and

PPJ Spolka Jawna is registered in Poland, it would cause undue hardship to require them to

litigate in the United States.   As the Court is not granting any relief as these entities, it appears

that this concern is moot.   But the Court is granting relief as to PPJ Capital, which is an entity

incorporated in Delaware and is involved in the purchase of properties in the United States.   It

does not appear that anyone has asserted the doctrine of *forum non conveniens* as to PPJ Capital.

But to the extent that such an argument is asserted, the Court rejects it given the facts and

circumstances of this case.   *See Norex Petroleum, Ltd. v. Access Indus.*, 416 F.3d 146, 153 (2d

Cir. 2005) (explaining that the three-step analysis for *forum non conveniens* requires that court

determine the degree of deference properly accorded the plaintiff's choice of forum, whether the

alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute, and

balance the private and public interests implicated in the choice of forum); *see Piper Aircraft Co.

v. Reyno*, 454 U.S. 235, 266 (1981) (noting that a court has broad discretion in applying the

doctrine of *forum non conveniens*).

    Second, while no party has raised the issue, the Court concludes that this injunction does

not run afoul of the Supreme Court's decision in *Grupo Mexicano de Dessarrollo S.A. v.*

*Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).  In *Grupo Mexicano*, the Supreme Court held

that the equitable powers of the federal courts do not extend to issuing a preliminary injunction

in actions solely at law before a plaintiff's claim for money damages has been adjudicated.  *See*

*id.* at 310, 333.  But that decision does not address injunctions issued where equitable remedies

have been asserted.  *See Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) (holding

that district court had equitable authority to issue preliminary injunction over a defendant's

assets in lawsuit where claim was equitable) (discussed in *In re Atlas Fin.*, 2014 WL 172283, at

*3).  As the Trustee here seeks injunctive relief to set aside transfers and declare various assets to

be property of the estate, the injunction here is sought to preserve the Trustee's right to obtain

meaningful relief on the merits of her equitable claims.  *See In re Atlas Fin.*, 2014 WL 172283,

at *3 (noting that court may issue injunctive relief to preserve status quo pending judgment

where a legal remedy might prove inadequate and the preliminary relief furthers the court's

ability to grant the final equitable relief requested); *cf. In re SK Foods*, 2010 WL 9476207, at *19

(noting that remedy for fraudulent and preferential transfer claims is return of transferred

property and that injunction protects court's ability to grant the ultimate relief requested).  In

addition, the injunctive relief here will prevent the dissipation of assets that might otherwise

render moot any ruling on the merits of the Trustee's complaint in this case.

## <u>CONCLUSION</u>

For all these reasons, the Court grants the Trustee's motion for a preliminary injunction as against Habringer Group Inc., Pojest Apartments, LLC and PPJ Capital, Inc. to the extent set forth in this ruling.

Dated: New York, New York
      July 20, 2015

                                 ***/s/ Sean H. Lane***             
                                 UNITED STATES BANKRUPTCY JUDGE